**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA**
*Roanoke Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.: 7:24-CR-13 |
| | ) | |
| RAHYEEM TYQUAN BAKER, | ) | |
| | ) | |
| *Defendant.* | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

COMES NOW, the Defendant, Rahyeem Tyquan Baker, and submits this Sentencing Memorandum in support of a downward variance from the sentencing guidelines range[1] in light of the factors to be considered under 18. U.S.C. § 3553(a).

**I. FACTUAL BACKGROUND**

This Court is more than aware of the systematic barriers young black men face that can lead to involvement in cycles of incarceration, unemployment and harmful behaviors. Exposure to violence and trauma makes it harder for individuals to break free from these negative cycles, and Mr. Baker is no different. As a 35-year-old man, Mr. Baker has been the victim of more violence than anyone should in their lifetime.

Mr. Baker's first victimization of gun violence occurred in his late 20s when he was shot in both legs at a party that he was attending. In fact, he had never even spoken to the man who shot him. Following his hospitalization and extensive surgeries, medical providers were uncertain if he would ever walk again. He required the use of a wheelchair for several weeks before

---

[1] As discussed in Defendant's Initial Objections to the Presentence Investigation Report, Mr. Baker objects to the Government's calculations of his guideline term of imprisonment, and he further objects to the computation of a Criminal History Category V. He reasserts that his guideline range should be 37 to 46 months based on an offense level of 17 and a Criminal History Category IV.

1

becoming strong enough to use a walker; however, Mr. Baker permanently suffers from restless leg syndrome in both of his legs.

Four months later, Mr. Baker was sitting in a car outside of his ex-girlfriend's apartment when he was shot in the head during a drive-by shooting. He recalls hearing several gunshots being fired throughout the Lincoln Terrance parking lot, and one of the miscellaneous rounds hit his head. The gunshot wound to his head resulted in a medically induced coma for several days. To date, he experiences chronic migraines from his head injury, which prevent him from sleeping and requires prescription medication.

Mr. Baker is also a victim of domestic violence. Within one year after being shot in both legs and in his head, Mr. Baker was shot by his ex-girlfriend in both arms when he attempted to leave the relationship. He suffers permanent disabilities from the injuries that he sustained in his forearms despite multiple surgeries. This particularly violent experience not only causes him the most physical pain today and but also the most emotional trauma. Unlike the two prior shootings, the wounds he suffered from the hands of an ex-partner cut deep and affect his ability to be vulnerable with loved ones.

Several months ago, Mr. Baker attempted to share his personal experiences with the mother of his 12-year-old son in hopes of empowering her to leave her own domestic abuser. When she nevertheless resumed her abusive relationship, their son R.S. began calling Mr. Baker during his mother's beatings and fearful of his own safety. Consequently, Mr. Baker retrieved R.S. from his mother's home and accompanied him to file for a protective order. A permanent child protective order was subsequently granted by the Roanoke City Juvenile and Domestic Relations District Court against the mother's boyfriend, and R.S. has been living primarily with Mr. Baker ever since. See Rahmeer D. Smith; By NF v. Malik Andrews, JA046886-01-00, (Va. Juv & Dom. Rel. Dist.

2

Ct., Oct. 9, 2024).

Unfortunately, the instability of his children's mothers' homes does not stop there. The mother of Mr. Baker's daughter was recently arrested for allegedly selling drugs, and she now faces mandatory minimum terms of incarceration in the federal penal system. See United States v. Shaquan Lacole Webb, 7:24-mj-00035. Following her arrest, Mr. Baker became the primary legal custodian of their 4-year-old daughter K.B – his only daughter amongst his four children. Mr. Baker's greatest fear of his impending term of incarceration is the future of K.B. whom he lovingly calls "Girlfriend," considering both parents are currently facing federal sentencing hearings.

The personal and societal hardships experienced by Mr. Baker have hindered his development from a young age. Mr. Baker has never met his father, and his mother worked three jobs to help provide for him and his brother. Education was never prioritized in his household, and the lack of parental supervision lured Mr. Baker to begin drinking alcohol and smoking marijuana while in the fifth grade. By 16, he was drinking and smoking daily. Mr. Baker is diagnosed with Bipolar I and generalized anxiety disorder, but as a young man, he did not receive professional mental health services and replaced much-needed clinical treatment with drug and alcohol abuse. Consequently, he suffered from co-occurring disorders, which only exacerbated his comorbidity.

In the 10th grade, Mr. Baker dropped out of high school to seek employment after learning that his girlfriend was pregnant with twins. With little to no education, severe alcohol use disorder and untreated mental health illnesses, it is no surprise that Mr. Baker was unable to maintain gainful employment in his teens and early 20s. His legal problems only spiraled and thus the negative cycles of incarceration, unemployment and destructive behaviors ensued.

3

Nevertheless, taking responsibility, seeking education and mentorship, and developing strong relationships are signs of growth and an individual's commitment to break free from negative cycles. Mr. Baker has clearly taken these steps towards positive change, and his dedication to rebuilding a stronger, more productive sense of self is unwavering. As discussed in greater detail below, the man appearing before this Honorable Court next month for sentencing is not the same man who foolishly and unlawfully possessed a firearm on January 25, 2022.

## II. SENTENCING FACTORS CONTAINED IN 18 U.S.C. § 3553

### A. The Nature and Circumstances of the Offense and the History and Characteristics of Rahyeem Baker Support a Downward Variance under Section 3553(a)(1)

Mr. Baker's involvement in the instant offense arose when he accepted a ride from his friend whom he knew had a firearm in the car. Once again, Mr. Baker willingly and recklessly placed himself in a detrimental situation that he should have avoided. He was arrested that night and served 11 months before finally being released in late 2022. Mr. Baker describes his last and most recent term of incarceration as "needed." In his own words:

> I needed that time to sit, for real. I realized how tired I was of how my life was going. I knew the drugs and drinking had been holding me back for a while… but now I'm locked back up, looking around at dudes I served time with over and over again, and I thought, damn, ain't y'all tired too? So, I decided I don't wanna do this no more.

Upon his release from the Roanoke City jail, Mr. Baker stopped drinking and limited his social circle to only positive influences – one example being his two-year relationship with Valencia Burch. Ms. Burch is a Vocational and Adaptive Civic Teacher and Job Coach for Minick School. She has no criminal record, and she began dating Mr. Baker in early 2023. She describes instantly being attracted to him, "because he has a great heart, like a really great heart. And he's so good with his kids! I mean, he'll do their homework with them even he doesn't understand it himself!" Telephone Interview with Valencia Burch (March 20, 2025).

As their relationship progressed, she observed Mr. Baker's symptoms of trauma and mental health illness firsthand:

> He wouldn't sleep in the bed upstairs. He would sleep downstairs by the door. And he paced a lot. Eventually, as we got closer, he opened up to me and told me that he used to go to Blue Ridge Behavioral. I encouraged him to go back. There's a cultural stigma in our community when it comes to getting help for mental health, and he had already stopped drinking, but he needed some encouragement to finally get back on his prescription medication.

Id.

Mr. Baker's commitment to maintaining mental health treatment exemplifies his desire to break free from negative cycles and intergenerational toxicity.

For the instant offense, Mr. Baker has been supervised on home incarceration since April 3, 2024. Since posting bond, his compliance with pretrial release has been nothing short of perfect. His lack of repeat offending post-arrest and his strict observance of bond conditions support varying from the applicable sentencing guidelines range. On July 29, 2024, Mr. Baker sought to modify his home incarceration to add employment. The Government had no objection to this modification in light of Mr. Baker's strict compliance on home incarceration.

Currently, Mr. Baker earns $22.00/hour at Valcom, Inc., which is the highest wage he has earned since dropping out of high school. Additionally, Mr. Baker started GED classes this year, and he earned his Commercial Driver's License on February 5, 2025, after successfully completing the prescribed course of study and practice in tractor-trailer driver training. See ECF No. 54, Ex. 4.

Courts have varied under Section 3553(a)(1) based on the defendant's personal qualities indicating the potential for rehabilitation. Prior to his arrest and while on home incarceration for the past 12 months, Mr. Baker's personal commitment to rehabilitation has been evident. He has demonstrated sobriety, maturity, financial stability and stronger ties with positive members of the

community.    Home incarceration has proved both rehabilitative and provided sufficient supervision to protect the public and deter Mr. Baker from engaging in any illegal activities.

The manner in which Mr. Baker sincerely and candidly accepted responsibility for his actions reinforce his candidacy for rehabilitation and leniency.   Furthermore, the Government has no objection to the Mr. Baker's request that this Court adjust his sentence by 11 months to account for the 11 months that he served in state custody for relevant conduct that he would otherwise not be credited towards his federal sentence by the Bureau of Prisons.   See U.S.S.G. § 4A1.2(a); U.S.S.G. § 5G1.3; see also ECF No. 47, at 4.

Clearly, the nature and circumstances of the offense and the characteristics of Mr. Baker's case support a downward departure from the applicable guidelines range by at least 11 months for the time he served in state custody in 2022, and by an additional 12 months for time he has served on Home Incarceration since April 3, 2024.

**B.  Just Punishment and Deterrence Does Not Require a Lengthy Custodial Sentence for Mr. Baker**

The Supreme Court has noted that Section 3553(a)(3) requires courts "to consider sentences other than imprisonment." Gall v. United States, 552 U.S. 38, 59 (2007).  Moreover, courts have varied downward where the defendant could be deterred from future crimes through means other than imprisonment. See, e.g., United States v. Grossman, 513 F.3d 592, 597 (6th Cir. 2008) (downward variance was proper where counseling, treatment, and supervised release reduced the likelihood of recidivism); see also United States v. Davis, 20 F.4th 1217, 1221-22 (8th Cir. 2022) (affirming downward variance based upon a combination of the defendant's meritorious military career, positive pretrial release conduct and the "substantial punishment" the district court imposed through "ten years of supervised release, one year of home confinement, and other restrictions" under Section 3553(a)(3)).

6

The behavior of Mr. Baker home incarceration proves that further official detention, in the form of serving his active sentence in the federal penitentiary, is not needed to protect the public or deter him from future crimes. Given his acceptance of responsibility, personal growth since 2022, voluntary commitment to living a life of sobriety prior to his federal arrest, and his present financial stability, he is highly unlikely to repeat any criminal activity. Therefore, a lengthy period of home confinement after time served, combined with a significant term of supervised probation, would amount to "a sentence sufficient, but not greater than necessary, to comply with the purposes" of 18 U.S.C. § 3553. See, e.g., United States v. Whitehead, 532 F.3d 991, 993 (9th Cir. 2008) (per curiam) (affirming downward variance because the defendant's crime "[di]d not pose the same danger to the community as many other crimes"); United States v. Pauley, 511 F.3d 468, 474–75 (4th Cir. 2007) (affirming downward variance based in part on findings that the defendant was less culpable than others seeking to produce child pornography).

Moreover, Mr. Baker has maintained interpersonal stability for his 12-year-old son and 4-year-old daughter, whose respective mothers are unable to provide safe living environments. Pursuant to USSG §5H1.6, this Court may consider the "substantial, direct, and specific loss of essential caretaking or essential financial support, to the defendant's family" to consider a downward departure. Therefore, not only will a sentence of home confinement serve the public's interests, but it will also ensure that Mr. Baker's son does not return to an abusive home and Mr. Baker's daughter will avoid the foster care system.

### III. WITNESSES AND EVIDENCE

Mr. Baker will call his mother Angela Baker to testify on his behalf and shall submit character letters for the Court's consideration.

7

## IV. CONCLUSION

Based on the above-outlined arguments, it is respectfully submitted that after weighing the sentencing factors of 18 U.S.C. § 3553, Mr. Baker is deserving of a significant downward variance. He has accepted responsibility, cooperated in bringing this matter to a resolution and has shown to be deserving of the Court's mercy at sentencing.

Respectfully Submitted,
RAHYEEM TYQUAN BAKER

By: /s/Sheila Moheb
Counsel

Sheila Moheb, Esq. (VSB#82439)
Moheb Legal Defense, PLLC
133 Salem Avenue SW, Suite 100
Roanoke, VA 24011
Telephone: 540-491-9606
Fax: 540-491-9696
Email: sheilamoheb@moheblegal.com

8

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of March 2025, a true and accurate copy of the foregoing Defendant's Sentencing Memorandum was filed electronically. Parties may access this filing through the Court's system. Notice of this filing will be sent by operation of the Court's electronic filing system.

Sheila Moheb, Esq. (VSB#82439)
*Counsel for Defendant*