**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **)** | |
| | **)** | |
| **v.** | **)** | **Case No.: 7:24-CR-13** |
| | **)** | |
| **RAHYEEM TYQUAN BAKER** | **)** | |

## SENTENCING MEMORANDUM

COMES NOW the United States of America, by counsel, and submits this sentencing memorandum. As directed by Title 18, United States Code, Section 3553(a), the Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in Section 3553(a)(2). The enumerated factors described therein guide what sentence the court should impose. As discussed below, the United States believes that a term of imprisonment of 57 months, and a 2 year period of supervised release, comports with those statutory requirements.

## Nature and Circumstances of the Offense

On January 25, 2022, law enforcement encountered the defendant, Rahyeem Tyquan Baker, at a 7-11 in Salem, Virginia. Baker, who had an outstanding arrest warrant, was observed exiting the front passenger seat of a Nissan Pathfinder. Inside that vehicle, law enforcement observed what appeared to be a firearm on the front passenger floorboard, although it was partially covered by a shirt. The vehicle was searched after a K-9 alerted to the presence of narcotics, and law enforcement recovered a Romarm/Cugir, model Draco, 7.62mm pistol. Mr. Baker has since admitted to possessing this weapon.

The possession of a firearm by a convicted felon, much less a multiple time convicted felon, is a serious offense. However, it is the events preceding the recovery of this firearm that are most troubling. At approximately 4:00 a.m., on January 25, 2022, law enforcement responded to a shots-fired call at 2120 Hanover Avenue in Roanoke, Virginia. Upon arrival, officers

1

encountered D.W.A., who stated that Rahyeem Baker had kicked in the front door of her residence, entered with a firearm, and called out for her son. Apparently, Mr. Baker and the son had gotten into a fight earlier that morning. After Mr. Baker could not find the son inside, D.W.A. explained that he exited the residence and then fired several shots at the house.

Responding officers located multiple 7.62mm cartridge casings in the front yard. However, a firearm and toolmarks examiner with the Virginia Department of Forensic Science later opined that the firearm possessed by Mr. Baker in the Pathfinder was not the weapon used in the shooting. Nevertheless, it is the exact same kind of gun that was used in the shooting, as investigators later recovered that particular Draco during the execution of a search warrant at a residence in Roanoke in December 2022. That Draco, which had been painted red, appeared similar to one depicted in a photograph found on Mr. Baker's cellphone.

### Applicable Sentencing Guidelines

The Court is required to consider the Sentencing Guidelines as one of the factors in determining the appropriate sentence. Both parties objected to the Initial Presentence Report. In pertinent part, Mr. Baker objected to the scoring of a prior conviction and the inclusion of any facts related to the shooting at 2120 Hanover Avenue. ECF No. 54 (Defendant's Objections). The government supported the inclusion of those facts, but believed that pursuant to U.S.S.G. § 2K2.1(b)(6)(B), they merited a four point enhancement to Mr. Baker's offense level for using or possessing any firearm in connection with another felony offense.

After considering these objections, the Probation Officer filed a Final Presentence Report (PSR). ECF No. 57. The Probation Officer agreed with the government regarding the four level enhancement and amended the report to reflect a new Total Offense Level of 21. The Probation Officer also opined that the scoring of Mr. Baker's conviction for destruction of property was

appropriate. Thus, the corresponding guideline range of imprisonment is now 70 months to 87 months. PSR, ¶ 86.

As it relates to the scoring of the misdemeanor destruction of property conviction, the government believes the Probation Officer's analysis is correct. First, the defendant's own exhibit to his Objections to the Presentence Report references the underlying charge as being "Destruction of Property." Thus, it is a countable offense pursuant to U.S.S.G. § 4A1.1(c). Second, although the records appear to indicate that the defendant was found guilty, even if it were a deferred prosecution, as Mr. Baker suggests, pursuant to U.S.S.G. § 4A1.2(f) it could still remain a countable offense if it resulted from a finding or admission of guilt. Thus, the government believes Probation has correctly scored the Criminal History Category V.

As to the scoring of the four level enhancement, based upon his previous objections, the defendant will undoubtedly object to this change to the PSR. Therefore, the United States bears the burden of proving the facts necessary to support this sentencing enhancement. *See United States v. Steffen*, 741 F.3d 411, 414 (4th Cir. 2013). This enhancement requires proof of two primary elements. First, the government must prove that the defendant committed a separate felony offense. Second, the government must prove that the defendant used or possessed a firearm "in connection with" that separate felony offense.

Here, the firearm used in the shooting offense is not the firearm cited in the offense of conviction. Nevertheless, Application Note 14(E)(ii) to the commentary to U.S.S.G. § 2K2.1 indicates that section (b)(6)(B) can apply if the United States demonstrates that the two unlawful possession offenses were part of the same course of conduct or common scheme or plan. Yet, the "in connection with" analysis is mooted if the government cannot first demonstrate that Mr. Baker was the individual who shot at 2120 Hanover Avenue, and that his conduct constituted a separate

felony offense.

The guidelines define "another felony offense" as "any federal, state, or local offense, punishable by a term of imprisonment exceeding one year, regardless of whether" the defendant was either charged or convicted of that crime. U.S.S.G. § 2K2.1, cmt. n.14(C).  Here, the alleged separate felony offense (hereinafter "conduct") is shooting into an occupied dwelling, in violation of Virginia Code Section 18.2-279. Thus, there should be no dispute that the conduct at issue constitutes a separate felony offense. There should also be no dispute that someone shot at D.W.A.'s house, as the shooting was captured on a neighbor's security camera. Rather, the issue is who committed this conduct.

As noted in the Defendant's Objections, the state charges against Mr. Baker were dismissed after D.W.A.'s testimony. Nevertheless, the government intends to call D.W.A. as a witness at the sentencing hearing. It will also seek to introduce her statements to law enforcement as captured on a responding officer's body worn camera. Finally, in addition to playing the security video of the shooting, the government will attempt to introduce a photograph of a gun found in Mr. Baker's phone, so that the Court can compare it to a photograph of the gun used in the shooting. However, the government does not intend to call the owner of the residence where that firearm was found as a witness at the sentencing hearing.[1]

Assuming the Court finds by a preponderance of the evidence that Mr. Baker was the shooter, it must determine whether both offenses "are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of

---

[1] While the Court can still consider "any relevant information before it…provided that information has sufficient indicia of reliability to support its accuracy," *see United States v. Wilkinson*, 590 F.3d 259, 269 (4th Cir. 2010) (citations omitted), in light of this decision, the government would respectfully request that the Court not consider the statements set forth in Paragraph 17 of the PSR in ruling on this objection.

offenses." U.S.S.G. § 1B1.3, cmt. n.5(B)(ii). This involves a three-factor analysis: the degree of similarity of the offenses, the regularity (repetition) of the offenses, and the time interval between the offenses. *Id.* If one of the factors is absent, then a stronger presence of at least one of the other two factors is required. *Id.*

Here, the degree of similarity between the offenses militates in favor of a finding that the possession of both firearms was part of the "same course of conduct." The firearms were both Romarm/Cugir, model Draco, 7.62mm pistols, they were both possessed in a car (as shown on the security video), and the defendant's possession of each weapon was prohibited. Additionally, the need to discard one gun and obtain another completes the story of the events of January 25, 2022, and thus the common purpose in their possession also demonstrates that the two offenses were part of a "common scheme or plan."

Based upon the foregoing, the government submits that so long as it proves by a preponderance of the evidence that Mr. Baker committed a separate felony offense, then it will have met its burden with respect to the application of the enhancement.

### History and Characteristics of the Defendant

Despite a lengthy and consistent criminal history, since his release from incarceration in 2022, the defendant has not been convicted of any criminal offenses. And save for this federal indictment, he has not been accused of committing any criminal offenses. Unfortunately, almost three years of good behavior cannot entirely erase the prior fourteen years of misconduct.

To be sure, the defendant's lack of guidance as a youth undoubtedly contributed to his engaging in criminal behavior. In 2008, at the age of 19, Mr. Baker became a convicted felon for possessing cocaine.  He then repeated his unlawful possession of controlled substances in 2010 and 2012. In 2013, he was convicted of misdemeanor distribution of marijuana, only to elevate his

5

involvement in drug distribution two years later when he was convicted of possessing heroin with the intent to distribute. Another felony possession of a controlled substance (heroin) followed, as did several other misdemeanor offenses prior to his incarceration in 2022.

Despite the plethora of narcotic related felony convictions, Mr. Baker's prior record is devoid of any offenses involving firearms. Yet, he has been shot multiple times, which perhaps explains, in part, why he would be in possession of a firearm. Additionally, he has no prior convictions for committing any violent crimes, thus making the alleged events that preceded his admitted possession of a firearm a potential aberration.

Mr. Baker is a Criminal History Category V, in part, because of the aforementioned destruction of property conviction. He also received a point for being under a criminal justice sentence, although it is worth noting that this suspended sentence was not revoked after he was convicted of possessing ammunition. Without receiving either one of these points, his Criminal History Category would be IV, and the government submits that this category perhaps most fairly accounts for his past record and recent accomplishments.[2]

As set forth in the Defendant's Sentencing Memorandum, Mr. Baker's active role as a father is also commendable and weighs in his favor. As does his recent employment. These positive changes in his life certainly mitigate against his lengthy criminal history and the offense conduct, but, on balance, the United States submits that its recommended sentence is still sufficient, but not greater than necessary, especially when considering the need for the sentence imposed.

### The Need for the Sentence Imposed

The sentence imposed here must reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense. A term of imprisonment of 57 months

---

[2] It is also the criminal history category the government believed him to be prior to reviewing the PSR.

accomplishes these goals. Such a sentence also affords adequate general deterrence to criminal conduct.

## Witnesses and Evidence

As discussed above, the United States intends to call D.W.A. as a witness in this matter. The United States also intends to call ATF SA Andrew Burton, or his designee, to discuss the overall investigation, including the recovery of the weapon used in the shooting and the discovery of the photograph of what appears to be a similar weapon in Mr. Baker's phone. The United States may also call former Roanoke City Police Officer Wesley Richer, who responded to 2120 Hanover Avenue on January 22, 2025, to discuss the recovery of the security footage depicting the shooting, the recovery of casings, and his interactions with D.W.A. that were captured on his body-worn camera.

In a separate submission, the United States is providing a copy of its exhibits to the Court and counsel for the defendant. These materials were provided to counsel for the defendant in discovery and are described as follows.

- Officer Richer's Body Worn Camera Footage
- D.W.A. Grand Jury Transcript
- Security Camera Footage of Shooting
- Booking Photograph of Mr. Baker
- Photograph of Nissan Pathfinder
- Photograph of Firearms
- ATF Report of Firearm & Toolmark Analysis

## Conclusion

To be certain, the offense of conviction involves the possession of a firearm in a vehicle. And there is undoubtedly a difference between proving someone committed a separate felony offense by a preponderance of the evidence, and proving it beyond a reasonable doubt. In making its sentencing recommendation, the government is mindful of these distinctions. Yet, it is

7

appropriate for the Court to consider the full scope of the defendant's conduct on January 25, 2022.

Just as it is appropriate for the Court to consider his conduct since that time.

Based upon the foregoing, the United States submits that a sentence of imprisonment of 57 months—or a sentence within the applicable guideline range of imprisonment should the enhancement not be proven—is sufficient, but not greater than necessary, taking into account the nature and circumstances of the offenses and the history and characteristics of the defendant. This sentence of imprisonment also reflects the seriousness of the offense, and affords adequate deterrence to criminal conduct.

Respectfully submitted,

ZACHARY T. LEE
Acting United States Attorney

Date: March 28, 2025.

*s/M. Coleman Adams*
Assistant United States Attorney
VA State Bar No. 76450
U.S. Attorney's Office
310 First St., S.W., Ste. 906
Roanoke, Virginia 24011
540-857-2250 (phone)
540-857-2614 (fax)
coleman.adams@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Sentencing Memorandum has been electronically filed by CM/ECF system, which will send notification of such filing to defendant's counsel, on this the 28th day of March 2025.

*s/M. Coleman Adams*
Assistant United States Attorney